THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Zoa Hepburn, | |
| Plaintiff, | Civil Action No. |
| vs. | _____ |
| P3M Hospitality, LLC d/b/a Eataliano, Marc Gholam, Marie Nocharli, and Marcello Najim, Jr., | |
| Defendants. | |

## COMPLAINT

Plaintiff Zoa Hepburn ("Hepburn") brings this Complaint against Defendants P3M Hospitality, LLC d/b/a Eataliano ("P3M"), Marc Gholam, ("Gholam"), Marie Nocharli ("Nocharli"), and Marcello Najim, Jr. ("Najim"), and shows this Court as follows:

## INTRODUCTION

1.

Hepburn worked as a bartender at "Eataliano", a restaurant operated by Defendants. Because Hepburn was forced to pay into an illegal tip pool, she was not paid the minimum wage as required by the FLSA. In addition, Defendants truncated her time records to avoid paying her overtime as required by the FLSA and did not pay her for all hours worked.  Hepburn further asserts claims against P3M for filing a fraudulent filing of IRS Form W2 for the year 2017 in that

Hepburn's tips were grossly exaggerated for the benefit of the individual Defendants.

**JURISDICTION AND VENUE**

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and FLSA §16(b), 29 U.S.C. §216(b), 28 U. S.C §§ 1331 and 1337, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

This Court has supplemental jurisdiction over Hepburn's state law claims set forth herein arising under Georgia law in accord with 28 U.S.C. §1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy.

4.

Venue properly lies in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 because P3M's principal business address is located in this judicial district, and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**PARTIES**

5.

Hepburn resides in DeKalb County, Georgia.

6.

During all times relevant to this action from May 25, 2017 through the present date ("the Relevant Time Period"), Defendants operated a restaurant known as "Eataliano" at 2480 Briarcliff Road, NE, Atlanta, Georgia.

7.

P3M is a domestic limited liability company organized under the laws of the State of Georgia.

8.

At all times material hereto, Hepburn has been an "employee" of P3M as defined in 29 U.S.C. § 203(e)(1).

9.

P3M can be served via its registered agent Marie Nocharli, at 535 Glengate Cove, Atlanta, Georgia 30328.

10.

P3M is subject to the personal jurisdiction of this Court.

11.

Defendant Gholam resides in DeKalb County, Georgia.

12.

At all times material hereto, Gholam was an "employer" of Hepburn as defined in 29 U.S.C. §203(d).

13.

Gholam is subject to the personal jurisdiction of this Court.

14.

Gholam may be served with process at his residence located at 3137 Bolero Drive, Atlanta, Georgia 30341 or wherever he may be located.

15.

Defendant Nocharli resides in Fulton County, Georgia.

16.

At all times material hereto, Nocharli was an "employer" of Hepburn as defined in 29 U.S.C. §203(d).

17.

Nocharli is subject to the personal jurisdiction of this Court.

18.

Nocharli may be served with process at her residence located at 535 Glengate Cove, Atlanta, Georgia 30328 or wherever she may be located.

19.

Defendant Najim resides in Fulton County, Georgia.

20.

At all times material hereto, Najim was an "employer" of Hepburn as defined in 29 U.S.C. §203(d).

21.

Najim is subject to the personal jurisdiction of this Court.

22.

Najim may be served with process at his residence located at 35 Marchman Drive, Atlanta, Georgia 30342 or wherever he may be located.

## ENTERPRISE COVERAGE

23.

During the Relevant Time Period, P3M has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

24.

During 2017, P3M had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

25.

During 2018, P3M had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

26.

At all times during the Relevant Time Period, P3M was an enterprise engaging in interstate commerce by among other things, regularly selling alcoholic beverages that were produced and shipped from outside of the State of Georgia, regularly serving foods that were produced and shipped from outside of the State of Georgia, and regularly processing out-of-state credit card sales in the furtherance of its business.

27.

During 2017, P3M had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

28.

During 2018, P3M had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

29.

At all times during the Relevant Time Period, P3M had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

30.

At all times material hereto, P3M has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

**STATUTORY EMPLOYER ALLEGATIONS**

31.

At all relevant times, Gholam has acted directly or indirectly in the interest of P3M in his interactions with Hepburn and controlled the terms and conditions of Hepburn's employment.

32.

At all relevant times, Gholam was involved in the day-to-day operation of P3M.

33.

At all relevant times, Gholam was an owner of P3M.

34.

At all times relevant to this action Gholam has had the highest-level management authority at P3M.

35.

At all times during the Relevant Time Period, Gholam exercised operational control over Hepburn's work activities.

36.

At all times during the Relevant Time Period, Gholam exercised supervisory authority over Hepburn.

37.

At all times during the Relevant Time Period, Gholam scheduled Hepburn's working hours or supervised the scheduling of Hepburn's working hours.

38.

At all times during the Relevant Time Period, Gholam exercised authority and supervision over the terms of Hepburn's compensation.

39.

At all relevant times, Nocharli has acted directly or indirectly in the interest of P3M in her interactions with Hepburn and controlled the terms and conditions of Hepburn's employment.

40.

At all relevant times, Nocharli was involved in the day-to-day operation of P3M.

41.

At all relevant times, Nocharli was an owner of P3M.

42.

At all times relevant to this action Nocharli has had the highest-level management authority at P3M.

43.

At all times during the Relevant Time Period, Nocharli exercised operational control over Hepburn's work activities.

44.

At all times during the Relevant Time Period, Nocharli exercised supervisory authority over Hepburn.

45.

At all times during the Relevant Time Period, Nocharli scheduled Hepburn's working hours or supervised the scheduling of Hepburn's working hours.

46.

At all times during the Relevant Time Period, Nocharli exercised authority and supervision over the terms of Hepburn's compensation.

47.

At all relevant times, Najim has acted directly or indirectly in the interest of P3M in his interactions with Hepburn and controlled the terms and conditions of Hepburn's employment.

48.

At all relevant times, Najim was involved in the day-to-day operation of P3M.

49.

At all relevant times, Najim was an owner of P3M.

50.

At all times relevant to this action Najim has had the highest-level management authority at P3M.

51.

At all times during the Relevant Time Period, Najim exercised operational control over Hepburn's work activities.

52.

At all times during the Relevant Time Period, Najim exercised supervisory authority over Hepburn.

53.

At all times during the Relevant Time Period, Najim scheduled Hepburn's working hours or supervised the scheduling of Hepburn's working hours.

54.

At all times during the Relevant Time Period, Najim exercised authority and supervision over the terms of Hepburn's compensation.

**FRAUDULENT TAX FILING**

55.

In 2018, P3M filed an IRS Form W-2 with the IRS with respect to compensation that it paid Hepburn during 2017 ("the Hepburn 2017 W2 Form").

56.

P3M reported in Box 1 (Wages, tips, other comp.), Box 5 (Medicare Wages), and Box 16 (State wages and tips, etc.) on the Hepburn 2017 W2 Form that it paid Hepburn $18,533.65 in 2017.

57.

At all times during the Relevant Time Period, P3M's managers falsely processed tips in P3M's computer system under Hepburn's name so that it appeared she received all tips she earned.

58.

P3M did not pay Hepburn $18,533.65 in 2017.

59.

P3M paid Hepburn significantly less than $18,533.65 in 2017.

60.

When it composed and filed the Hepburn 2017 W2 Form, P3M knew that it did not pay Hepburn $18,533.65 in 2017.

61.

P3M falsely designated $18,533.65 in Boxes 1, 5 and 16 on the Hepburn 2017 W2 Form.

62.

P3M fraudulently designated $18,533.65 in Boxes 1, 5 and 16 on the Hepburn 2017 W2 Form.

63.

P3M intentionally and willfully composed and filed the Hepburn 2017 W2 Form and all of the false designations therein for the purpose of its own enrichment.

**NON-EXEMPT EMPLOYEE ALLEGATIONS**

64.

During the Relevant Time Period, P3M did not employ Hepburn in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

65.

During the Relevant Time Period, P3M did not employ Hepburn in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

66.

During the Relevant Time Period, P3M did not employ Hepburn in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

67.

At all times material hereto, P3M did not employ Hepburn in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

68.

At all times during the Relevant Time Period, Hepburn was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

69.

At all times during the Relevant Time Period, Hepburn was not exempt from the maximum hours requirements of the FLSA by reason of any exemption.

**ADDITIONAL FACTUAL ALLEGATIONS**

70.

P3M employed Hepburn from May 25, 2017 through the present date.

71.

At all times during the Relevant Time Period, P3M employed Hepburn as a bartender.

72.

P3M scheduled Hepburn for four (4) days of training beginning on or about May 25, 2017.

73.

P3M failed to compensate Hepburn at all for her first two days of training on May 25, 2017 and May 26, 2017.

74.

P3M then compensated Hepburn at a rate of $2.13 per hour without tips for two training days on May 30, 2017 and May 31, 2017.

75.

At all times relevant from June 1, 2017 through late August 2017, P3M compensated Hepburn at a rate of $2.13 per hour plus tips for her work as a bartender.

76.

At all times relevant from approximately August 29, 2017 through the present date, P3M compensated Hepburn at a rate of $5.13 per hour plus tips for her work as a bartender.

77.

At all times during the Relevant Time Period, Defendants required Hepburn to pay a portion of the tips she received directly to P3M's Bar Manager Stuart Spears.

78.

At all times during the Relevant Time Period, Defendants required Hepburn to split the tips she earned with Eataliano's Bar Manager Stuart Spears.

79.

At all times during the Relevant Time Period, Eataliano's Bar Manager Stuart Spears took approximately half of Hepburn's tips during each work shift on Thursdays, Fridays and Saturdays.

80.

At all times during the Relevant Time Period, P3M's Bar Manager Stuart Spears processed tips in P3M's computer system under Hepburn's name so that it appeared she received all tips.

81.

At times during the Relevant Time Period, Defendant required Hepburn to pay a portion of the tips she received directly to Eataliano's owner and General Manager Marc Gholam.

82.

At times during the Relevant Time Period, Defendants required Hepburn to pay a portion of the tips she received directly to Eataliano's owner and Kitchen Manager Marcello Najim.

83.

At all times relevant and as a result of illegal tip pooling, P3M was not legally entitled to utilize the "tip credit" and, therefore, P3M failed to compensate Hepburn at or above minimum wage for each hour she worked as required by the FLSA.

84.

During the Relevant Period, P3M failed to compensate Hepburn at a rate of $7.25 per hour for each hour she worked.

85.

At all times material hereto, Hepburn regularly worked more than 40 hours per week.

86.

At all times material hereto, Hepburn regularly worked more than 42 hours during each work week.

87.

During the Relevant Time Period, Defendants truncated the actual hours Hepburn worked during each work week to bring her total working hours below 40 hours per week.

88.

During the Relevant Time Period, Defendants failed to pay Hepburn at one-and-one-half times her regular rate for work she performed in excess of 40 hours in a workweek.

89.

On or about October 26, 2017, owner Marc Gholam advised Hepburn that she would be required to pay a credit card charge back in the amount of approximately $300.00 for a customer's unpaid bill.

## COUNT ONE - COUNT 1
## FAILURE TO PAY MINIMUM WAGE VIOLATION OF 29 U.S.C. § 206

90.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

91.

At all times material hereto, Hepburn was an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

92.

At all times material hereto, Defendants failed to compensate Hepburn at an hourly rate above or equal to the minimum wage.

93.

At all times material hereto, Defendants willfully failed to compensate Hepburn at an hourly rate above or equal to the FLSA minimum wage.

94.

Hepburn is entitled to payment of minimum wages by Defendants, jointly and severally, in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

95.

Hepburn is entitled to recover the funds paid by her into the illegal tip pool because they are forbidden kickbacks under the FLSA.

96.

As a result of the willful failure to pay minimum wages as alleged above, Hepburn is entitled to an award of liquidated damages from Defendants, jointly and severally, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

97.

As a result of the failure to minimum wages as alleged above, Defendants are jointly and severally liable to Hepburn for her costs of litigation, including her reasonable attorney's fees, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

## COUNT II

## FAILURE TO PAY AN OVERTIME PREMIUM IN VIOLATION OF 29 U.S.C. § 207

98.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

99.

At all times material hereto, Hepburn was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

100.

During the Relevant Time Period, Hepburn regularly worked in excess of forty (40) hours per week as a bartender for Defendants.

101.

During the Relevant Time Period, Defendants failed to compensate Hepburn at one-and-one-half times her regular rate for work in excess of forty (40) hours in any work week.

102.

During the Relevant Time Period, Defendants willfully failed to pay Hepburn at one and one half times her regular rate for work in excess of forty (40) hours in any work week.

103.

Hepburn is entitled to payment from Defendants, jointly and severally, of due but unpaid overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

104.

As a result of the failure to pay overtime compensation as alleged above, Hepburn is entitled to an award of liquidated damages from Defendants, jointly and severally, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

105.

As a result of the failure to pay overtime compensation as alleged above, Defendants are jointly and severally liable to Hepburn for her costs of litigation, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT III

## FRAUDULENT FILING OF TAX INFORMATION RETURNS (26 U.S.C. § 7434) AGAINST P3M

106.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

107.

In 2018, Defendants intentionally, willfully, and fraudulently composed and filed a fraudulent W2 Form with the IRS which materially misrepresented the amount of tips paid to Hepburn in 2017 and all corresponding deductions.

108.

At all times during the Relevant Time Period, P3M's Managers falsely processed tips in P3M's computer system under Hepburn's name so that it appeared she received all tips she earned.

109.

Defendants did not pay Hepburn the total tips and wages stated on the W2 Form for tax year 2017.

110.

As a consequence of Defendants' willful filing of fraudulent tax information returns, Hepburn is entitled to recover damages from Defendants, jointly and severally, up to and including any actual damages sustained, or in any event not

less than $5,000 per fraudulent filing, as well as her costs of litigation including her reasonable attorneys' fees, pursuant to 26 U.S.C. § 7434.

## COUNT IV
## BREACH OF CONTRACT AS TO DEFENDANT P3M

### 111.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

### 112.

During the Relevant Time Period, Hepburn and P3M have been parties to an oral contract of employment (hereafter "the Hepburn Contract").

### 113.

The Hepburn Contract provides that P3M will pay Hepburn for work that was performed by Hepburn on behalf of and for the benefit of P3M.

### 114.

P3M failed to compensate Hepburn at all for two days of training and truncated the actual number of hours she worked during each work week.

### 115.

P3M's failure to pay Hepburn any wages for two days of training and for all truncated hours during the Relevant Time Period constitutes a material breach of the Hepburn Contract.

116.

As the direct and foreseeable result of this breach, Hepburn has sustained and continues to sustain damages in an amount to be proved at trial.

## COUNT V
## QUANTUM MERUIT AS TO DEFENDANT P3M

117.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

118.

In 2017 and 2018, Hepburn served as a bartender for P3M.

119.

Hepburn's service as a bartender for P3M as described above was valuable to P3M.

120.

P3M requested Hepburn's service as a bartender.

121.

P3M knowingly accepted Hepburn's service as a bartender.

122.

The receipt of Hepburn's services as a bartender without compensation would be unjust.

123.

Hepburn expected to be compensated at the time she provided her services as a bartender to P3M.

124.

Hepburn is entitled to a recover from P3M, the reasonable value of the services he provided as a bartender for P3M, in an amount to be determined at trial.

## COUNT VI
## PROMISSORY ESTOPPEL AS TO DEFENDANT P3M

125.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

126.

P3M promised to pay Hepburn in return for Hepburn's service as a bartender for them.

127.

P3M should have reasonably expected that Hepburn would induce action in reliance of said promise, i.e., serve as a bartender for P3M.

128.

P3M's promise induced Hepburn to act in reliance thereof, i.e., to serve as a bartender for P3M, to her detriment.

129.

Hepburn's service as a bartender for P3M conferred a benefit on P3M.

130.

P3M failed to pay Hepburn in accordance with their promise.

131.

Hepburn relied on P3M's promise.

132.

Hepburn's reliance on P3M's promise was reasonable.

133.

Injustice can only be avoided by enforcement of P3M's promise.

134.

Hepburn is entitled to a recover from P3M, the reasonable value of the services she provided as a bartender for P3M, in an amount to be determined at trial.

WHEREFORE, Hepburn requests that this Court:

1. Award her an amount to be determined at trial against Defendants, in due but unpaid minimum wages due under the FLSA plus additional like amounts in liquidated damages;

2. Award her an amount to be determined at trial against Defendants, in due but unpaid overtime wages due under the FLSA plus additional like amounts in liquidated damages;

3. Award her nominal damages;

4. Award her actual damages and not less than $5,000 against all Defendants, jointly and severally, for the fraudulent tax information return filed by Defendants with respect to her 2017 wages;

5. Allow judgment against P3M, for the pendent State claims herein asserted in amounts to be proved at trial;

6. Award her prejudgment interest on all amounts owed;

7. Award her reasonable attorney's fees and costs of litigation; and

8. Award any and such other relief this Court deems just, equitable and proper.

Respectfully submitted,

DeLong, Caldwell, Bridgers, Fitzpatrick & Benjamin, LLC

3100 Centennial Tower
101 Marietta Street NW
Atlanta, GA 30303
404.979.3150
404.979.3170 (fax)
charlesbridgers@dcbflegal.com
kevin.fitzpatrick@dcbflegal.com

/s/ Charles R. Bridgers
Charles R. Bridgers
Georgia Bar No. 080791

/s/ Kevin D. Fitzpatrick, Jr.
Kevin D. Fitzpatrick, Jr.
Georgia Bar No. 262375

COUNSEL FOR PLAINTIFF